UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Linda Kulmann<br>a.k.a. Linda Ceniccola-Kulmann,<br><br>                        Plaintiff,<br><br>v.<br><br>Tracy Biolo, Waterbury Probate Court Chief Clerk, Americo R. Carchia, Waterbury Probate Judge<br><br>                        Defendants. | Civil No. 3:24-cv-01077-MPS<br><br><br><br>August 29, 2024 |

## RULING ON MOTION AND REPORT AND RECOMMENDATION ON INITIAL REVIEW

On June 21, 2024, Plaintiff Linda Kulmann[1], representing herself, filed a Complaint against Defendants Waterbury Probate Court Chief Clerk Tracy Biolo and Waterbury Probate Judge Americo R. Carchia making claims arising from Ms. Kulmann's 2023 request to access court records related to her disabled son. Pending is Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*. IFP Mot., ECF No. 2. This case was referred to me by Chief Judge Michael P. Shea for review of the Complaint pursuant to 28 U.S.C. § 1915. Referral Order, ECF No. 8.

When a plaintiff requests leave to proceed *in forma pauperis*, or "IFP," a statute directs the court to conduct two inquiries. First, the court examines her financial affidavit and determines whether she is truly unable to pay the fee. 28 U.S.C. § 1915(a). Second, to ensure that the plaintiff is not abusing the privilege of filing without prepaying the fee, the court reviews her complaint and dismisses the case if it determines that "the action . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

---

[1] Ms. Kulmann indicated in the case caption that she is also known as Linda Ceniccola-Kulmann.

1

For the reasons that follow, the Court grants the Motion for Leave to Proceed *In Forma Pauperis* and recommends dismissal of the Complaint without prejudice.

I.   **The First Inquiry: Plaintiff's Inability to Pay the Filing Fee**

Plaintiff has filed a motion seeking to proceed without payment of fees and costs, along with a financial affidavit. Plaintiff has fully completed the required information. She asserts that she cannot afford to pay fees and costs. IFP Mot. at 1. Furthermore, she affirms that she is unemployed, has no income other than about $200 of monthly assistance from her elderly mother, receives SNAP benefits, and has only $120 of liquid assets. *Id.* at 3-5. Such allegations are sufficient to establish that Plaintiff is unable to pay the ordinary filing fees required by the Court. 28 U.S.C. § 1915(a)(1). Accordingly, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* is GRANTED.

II.   **The Second Inquiry: Review of the Complaint Under 28 U.S.C. § 1915(e)(2)(B)**

Pursuant to § 1915(e), courts must review *in forma pauperis* complaints and dismiss any complaint that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is "frivolous" under the law when, among other things, it "has no arguable basis in law or fact" or "is based on an indisputably meritless legal theory." *Montero v. Travis,* 171 F.3d 757, 759 (2d Cir. 1999). "A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit." *Id*. at 760 (internal quotation marks and citations omitted). A complaint "fails to state a claim on which relief can be granted" when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2

inference that the defendant is liable for the misconduct alleged." *Id*. Furthermore, "a court must accept as true all of the allegations contained in the complaint [except] legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

These rules are interpreted liberally in the case of a plaintiff like Ms. Kulmann who is proceeding *pro se*—that is, without a lawyer. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, we must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. Of Elections,* 232 F.3d 135, 139-40 (2d Cir. 2000). Courts liberally construe pleadings and briefs submitted by self-represented plaintiffs, "reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

This leeway has limits, however. One limit is that the court may not fill the gaps in a *pro se* plaintiff's complaint by imagining facts that are not alleged. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). If, even with the benefit of a liberal reading, the *pro se* plaintiff's complaint does not give "an indication that a valid claim might be stated" in an amended pleading, the Second Circuit has advised that it should be dismissed with prejudice, meaning that it should be dismissed without an opportunity to amend. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of leave to amend because claims futile). Any claim dismissed on the ground of absolute judicial immunity need not be given leave to amend. *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011).

A. **The Complaint**

In the Complaint, Plaintiff asserts intentional infliction of emotional distress claims and constitutional claims under 42 U.S.C. § 1983 against Chief Clerk Biolo and Probate Judge Carchia,

acting in their official capacities, alleging violations of her rights arising from her 2023 request to access court records related to her disabled son. Compl., ECF No. 1. Reading her Complaint to raise the strongest arguments it suggests, I interpret it to allege that Defendants violated her First Amendment and common law right to open records by refusing to grant her access to court records from a case to which she was a party, and that they violated her procedural due process rights by depriving her of the opportunity to be heard as to her request for court records.

Plaintiff seeks injunctive relief requiring Judge Carchia to grant complimentary electronic and paper access to the court record within one week, to be completed under penalty of perjury by Chief Clerk Biolo. *Id*. at 7. Plaintiff also seeks to recover her legal costs and punitive damages. *Id*.

The following facts, taken from the Complaint, are accepted as true for the purposes of this initial review.

On September 11, 2023, as a party to her intellectually disabled son's case in Waterbury Probate Court, Plaintiff made a written request for access to the court record. *Id*. at 4. Plaintiff contacted the Waterbury Probate Court and was referred to Chief Clerk Biolo who handles intellectual disability cases. *Id*. Biolo looked over the request and instructed Plaintiff to cite law to support that she should be allowed to access the record. *Id*. Biolo stated the record is "confidential like a medical record; would you want anyone looking through your medical record?" *Id*. Biolo did not file the request. *Id*.

On September 27, 2023, Plaintiff returned to the Waterbury Probate Court with a new document requesting the court record and citing case law. *Id*. The new request cited Probate Court rules and procedures and Connecticut statutes "that allow [Plaintiff] to access the records." *Id*. A lawyer for the Probate Court addressed the request and required that Plaintiff "clean [the document] up." *Id*. Biolo, again, did not file the request. *Id*.

Plaintiff's third attempt to file a document requesting access to her son's court record was successful. *Id*. However, a hearing was then scheduled for November 10, 2023, on Veteran's Day, when the Court was closed. *Id*.

On February 17, 2024, Plaintiff mailed her request for access to her son's court record to the Waterbury Probate Court and sent certified copies to all interested parties. *Id*. Plaintiff acknowledges that the certified copy she sent to the Office of Protection Advocacy was returned due to an unknown address. *Id*.

The hearing was then rescheduled for April 5, 2024, and was subsequently marked off on March 26, 2024. *Id* at 5.

Plaintiff then filed a motion to disqualify and a complaint to the Probate Review Council for Judicial Misconduct "because judges are ultimately responsible for the staff that they hire to work there." *Id*.

On May 28, 2024, Plaintiff received a decree from Judge Carchia denying her request for access to the record. *Id*. There was no hearing held and no statement of decision published. *Id*. Plaintiff alleges that Judge Carchia and Ms. Biolo have caused her to experience anxiety and stress by denying her requests for records and requiring her to cite law supporting her position. *Id*. at 6.

### B. Discussion

#### 1. *Rooker-Feldman* Doctrine Bars Plaintiff's Equitable Claims

The *Rooker-Feldman* doctrine[2] bars federal district courts from hearing "cases that function as *de facto* appeals of state-court judgments." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018). For the *Rooker-Feldman* doctrine to bar a plaintiff's claim, "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-

---

[2] The doctrine is named for two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id*. at 645.

The *Rooker-Feldman* doctrine applies here to Plaintiff's request for equitable relief seeking the production of court records. First, Plaintiff lost in state probate court[3] on May 28, 2024, when Judge Carchia denied her request for access to the record. Second, she alleges that she was injured by the state court judgment. Third, the relief she requests seeks review and rejection of the state court judgment. Fourth, the state court judgment was issued before June 21, 2024, when she filed this lawsuit.

Accordingly, I conclude that the *Rooker-Feldman* doctrine precludes the exercise of federal jurisdiction over Plaintiff's claims for equitable relief[4] from Judge Carchia's May 28, 2024 Order, and I recommend that they be dismissed.

### 2. Defendant Waterbury Probate Judge Americo R. Carchia has Immunity from Section 1983 Claims Under the Common Law

It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See, e.g., Mireles v. Waco*, 502 U.S. 9 (1991).

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

---

[3] *Rooker-Feldman* does not apply exclusively to state courts of general jurisdiction. *See*, *e.g.*, *Pelczar v. Kelly*, 18-3833 (L), 795 Fed. App'x. 55, 57 (2d Cir. Feb. 11, 2020) (barring plaintiff from seeking an injunction to direct a New York State Surrogate's Court judge to undo a ruling admitting a will to probate and finding that certain property was part of his father's estate); *Niles v. Wilshire Inv. Group, LLC*, 859 F. Supp. 2d 308 (E.D.N.Y. 2012) (refusing to void a stipulation of settlement entered in probate proceedings in New York State Surrogate's Court).

[4] The equitable relief Plaintiff seeks is an order granting complimentary electronic and paper access to the court record within one week, to be completed under penalty of perjury by Chief Clerk Biolo.

*Id*. at 10 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). The protection of immunity is not pierced by allegations that the judge acted in bad faith or with malice, *Pierson v. Ray*, 386 U.S. 547, 554, (1967), even though "unfairness and injustice to a litigant may result on occasion," *Mireles*, 502 U.S. at 9. The United States Supreme Court has expressly applied the doctrine of judicial immunity to actions brought pursuant to 42 U.S.C. § 1983. *See Pierson*, 386 U.S. at 547.

The Supreme Court has developed a two-part test for determining whether a judge is entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). First, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id*. at 356-57 (quoting *Bradley*, 80 U.S. at 351); *see also Maestri v. Jutkolsky*, 860 F.2d 50, 51, 53 (2d Cir. 1988) (finding no immunity where town justice issued arrest warrant for conduct which took place within neither his town nor an adjacent town, thereby acting in the absence of all jurisdiction).

*Stump* distinguished between an "excess of jurisdiction" and "the clear absence of all jurisdiction over the subject matter." 435 U.S. at 356-57 n.6 (quoting *Bradley*, 80 U.S. at 351).

> Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

*Id*. *Stump* further explained that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.* at 356.

Second, a judge is immune only for "acts performed in his 'judicial' capacity." *Stump*, 435 U.S. at 360; *see Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974) (finding no immunity where

7

judge assaulted litigant); *cf. Idlibi v. Burgdorff*, 23-838-cv, 23-7384-cv, 2024 U.S. App. LEXIS 15629, at *7 (2d Cir. June 27, 2024) (summary order) (holding that a judge's alleged interference with a parent's legal filings in a child custody proceeding and alleged failure to properly notify the parent about the proceedings were "judicial in nature and function" and therefore not subject to suit).

Courts have applied the doctrine with equal force to both federal law claims and Connecticut state law claims, as well as to claims involving judges in courts of limited jurisdiction. *Gross v. Rell*, 585 F.3d 72 (2d Cir. 2009) (holding that a Connecticut probate judge is entitled to judicial immunity under Connecticut and federal common law).

Here, Plaintiff takes issue with Judge Carchia's alleged actions and omissions within the scope of his duties. The allegations are that Judge Carchia's Order denying her access to court records was incorrect, not that he overstepped his jurisdictional authority as a Probate Judge. Nothing in the Complaint suggests that Judge Carchia acted in the "clear absence of all jurisdiction" or outside his judicial capacity.

In summary, the doctrine of absolute judicial immunity bars all Section 1983 claims against Judge Carchia. Therefore, I recommend that the Court dismiss Plaintiff's Section 1983 claims against Judge Carchia because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and frivolously state claims against an absolutely immune defendant, 28 U.S.C. § 1915(e)(2)(B)(i), *see also Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute]").

### *3. Defendant Chief Clerk Tracy Biolo has Immunity from Section 1983 Claims Under the Common Law*

Judicial immunity extends beyond judges to also generally preclude claims against judicial branch employees. *See Rodriguez v. Weprin*, 116 F.3d 62 (2d Cir. 1997) (holding a state appellate court's chief clerk to be absolutely immune from a suit alleging he denied the plaintiff's right of access to the courts and court documents in the plaintiff's criminal case). In *Rodriguez*, 116 F.3d at 66, the Second Circuit reasoned that "the same policies underlying immunity for judges also justify a similar grant of immunity to clerks for performance of tasks which are judicial in nature and an integral part of the judicial process."

Biolo, as the chief clerk of the court, is a judicial officer and is thus entitled to immunity for actions taken in performance of a judicial function. As with Judge Carchia, Plaintiff accuses Chief Clerk Biolo of violating Plaintiff's First Amendment and common law right to open records and her procedural due process rights by depriving her of the opportunity to be heard as to her request for court records. Specifically, Plaintiff accuses Biolo of failing to file documents which Plaintiff provided to her.

"A court's inherent power to control its docket is part of its function of resolving disputes between parties", and actions taken by court staff in furtherance of docket control are part of that judicial function. *Id*. at 66-67 (holding that a claim that "the court clerks violated [the plaintiff's] due process rights by failing to properly manage the court calendar" was barred by judicial immunity"); *see also Peker v. Steglich*, 07-2379-cv, 324 F. App'x 38, 40 (2d Cir. 2009) (holding that a clerk's act of filing exhibits was "basic and integral to the judicial function"); *Charles v. O'Garro*, No. 3:18-cv-00729 (SRU), 2018 U.S. Dist. LEXIS 97419 (D. Conn. June 11, 2018) (holding that a clerk refusing to accept and file a notice of appearance is performing an act "in furtherance of docket control" and is therefore immune from suit); *Argentieri v. Clerk of Court for*

*Judge Kmiotek*, 420 F. Supp. 2d 162, 164-65 (W.D.N.Y. 2006) (holding that a clerk refusing to acknowledge a plaintiff's motions and refusing to schedule his court proceedings was "assisting judges in performing essential judicial functions" and is therefore entitled to absolute immunity); *Ceparano v. Southampton Justice Court*, No. 2:09-cv-00423 (SJF)(AKT), 2010 U.S. Dist. LEXIS 152448, at *8 (E.D.N.Y. Mar. 21, 2010), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 152445 (E.D.N.Y. May 12, 2010), *aff'd*, 10-2958-pr, 404 F. App'x 537 (2d Cir. Jan. 5, 2011) (holding that a clerk's act of entering an erroneously-issued warrant into the system was shielded by judicial immunity). By refusing to disclose medical records from a court's docket, Biolo performed a judicial function, and these actions which pertain to docket control are thus covered by judicial immunity.

For the same reasons as with Judge Carchia, and because they state a claim against a judicial branch employee for acts which are undertaken in performance of a judicial function, I recommend that Plaintiff's claims under Section 1983 against Biolo be dismissed. Plaintiff should not be granted leave to amend the Complaint because amendment would be futile in the face of the aforementioned barriers to suit.

### *4. The Remaining Claims Against Both Defendants for Intentional Infliction of Emotional Distress Do Not Merit Exercising Supplemental Jurisdiction*

Because I recommend dismissing all of the federal claims against both defendants, I also recommend dismissing the state law claim for intentional infliction of emotional distress. A district court may, in its discretion, decline to exercise supplemental jurisdiction over a state law claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "Federal courts most often ought to leave state issues to state courts as readily and as early in a proceeding as possible." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J. concurring).

There are many reasons why supplemental jurisdiction may appropriately be retained, however, and the presence of such reasons may justify the exercise of supplemental jurisdiction after the district court dismisses the federal claims. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7, (1988) (listing "judicial economy, convenience, fairness, and comity" as "factors to be considered under the [supplemental] jurisdiction doctrine"); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 308 (2d Cir. 2003) (the "interplay between the responsibilities imposed by municipal law and those imposed by state law" may pose "complex questions . . . best left to the courts of the state when the early disposition of all federal claims makes the federal court's resolution of such state-law claims unnecessary"). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n. 7; *accord Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93 (2d Cir. 2014); *see also Cohen*, 873 F.3d at 405 (Calabresi, J. concurring) ("[A] district court ought not to exercise supplemental jurisdiction over purely state-law claims [where all federal claims are dismissed] unless there are strong reasons for doing otherwise.").

Having concluded that Plaintiff has failed to plausibly allege a viable federal claim pursuant to 42 U.S.C. § 1983, factors such as judicial economy, convenience, fairness, and comity militate against the exercise of supplemental jurisdiction. Accordingly, I recommend that the court decline to exercise supplemental jurisdiction over Plaintiff's intentional infliction of emotional distress claims or any other cognizable state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### C. Conclusion

Accordingly, Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* is GRANTED and the Court RECOMMENDS DISMISSAL of the complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

This is a recommended ruling by a magistrate judge. Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C). **If Plaintiff wishes to object to my recommendation, she must file that objection with the Clerk of the Court within nineteen days (by September 17, 2024).** *See* Fed. R. Civ. P. 72(b)(2) (allowing fourteen-day period for objecting to Magistrate Judge recommended rulings); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for parties who, like Plaintiff, receive notice of an order or recommended ruling by mail). If she does not do so, she may not thereafter assign as error any claimed defect in this recommended ruling. D. Conn. L. Civ. R. 72.2(a). Failure to file a timely objection will also preclude appellate review. *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

*Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge